Docket No. 86871–Agenda 5–September 2000.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee and Cross-Appellant, v. MARCUS COOPER 
et al
., Appellants and

 Cross-Appellees.

Opinion filed November 22, 2000.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Following a joint bench trial held in the circuit court of Cook County, Marcus Cooper and Chester Starnes (defendants) were convicted of the first degree murder of Derrick Henderson (720 ILCS 5/9–1(a)(2) (West 1994)) and the aggravated battery with a firearm of Charles Robinson (720 ILCS 5/12–4.2(a)(1) (West 1994)). Both convictions were based on an accountability theory. The appellate court affirmed defendants’ convictions for aggravated battery with a firearm, but reversed the first degree murder convictions and remanded the cause to the trial court for a determination of whether defendants were prejudiced in their defense by the State’s failure to include a charge of felony murder in defendants’ indictments. Nos. 1–95–3211, 1–95–3212 cons. (unpublished order under Supreme Court Rule 23). The appellate court further ordered that should the trial court find that defendants were not prejudiced, it could then consider whether the State sufficiently proved defendants guilty of felony murder. We allowed defendants’ alternative petition for appeal as a matter of right or leave to appeal. 134 Ill. 2d R. 317; 177 Ill. 2d R. 315.

Defendants argue before this court that the appellate court erred in remanding the cause for consideration of whether the State sufficiently proved defendants guilty of felony murder after the appellate court reversed defendants’ convictions for first degree murder on the basis that defendants were not accountable for the murder. Defendants also contend that their convictions for aggravated battery with a firearm should be reversed. The State on cross-appeal argues that defendants were properly convicted of first degree murder based on an accountability theory.

In summary, the record reveals that on June 25, 1994, a shooting occurred in the City of Chicago between members of the Gangster Disciples and Black Disciples, rival street gangs. Both defendants admitted being Gangster Disciples, as did Tracy Stofer, who was tried with defendants and acquitted. Henderson, the murder victim, was also a member of the Gangster Disciples. Robinson, the aggravated battery with a firearm victim, was a member of the Black Disciples. Robinson testified at trial that he saw defendants shooting at the Black Disciples. Some of the Black Disciples returned fire. Henderson was killed and Robinson was shot twice. The trial court made factual findings that both defendants had fired weapons in the direction of the Black Disciples, that it was “foreseeable” that the Black Disciples would return fire, and that Henderson was killed as a result of the return fire by the Black Disciples. The trial court therefore found defendants guilty of first degree murder and aggravated battery with a firearm.

Thereafter, at the hearing on defendants’ post-trial motions, the trial court clarified that defendants were found guilty of first degree murder under accountability principles rather than felony-murder principles, because the State never charged felony murder in the indictment. The trial court further explained that it had found that defendants were the initial aggressors, that the Black Disciples had returned fire in self-defense, and that defendants were properly found guilty of the “knowing murder of Derrick Henderson because they knew and it was foreseeable that when they fired *** death or great bodily harm could result and it was foreseeable that in firing at rival gang members that rival gang members may have weapons to return fire.” The trial court also stated that it specifically found Robinson to be credible with regard to the identity of the shooters. Finally, because Robinson was wounded by either Cooper or Starnes, “under either situation [defendants] are accountable for that aggravated battery with a firearm.” The trial court then denied defendants’ post-trial motions and, following a sentencing hearing, imposed on Cooper concurrent terms of 25 years’ imprisonment for the first degree murder conviction and 18 years’ imprisonment for the aggravated battery with a firearm conviction. Starnes was sentenced to 50 years’ imprisonment for the first degree murder conviction and a concurrent term of 30 years’ imprisonment for the aggravated battery with a firearm conviction.

On direct appeal, the appellate court held that defendants could not be convicted of first degree murder based on an accountability theory because the State had not proven the first requirement for accountability, the commission of an overt act. Under section 5–2(c) of Illinois’ accountability statute (720 ILCS 5/5–2(c) (West 1994)), a person is legally accountable for the conduct of another when: “Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.” Here, the appellate court found there was no evidence that either defendant “solicited a Black Disciple to kill Henderson, aided or abetted the Black Disciple shooter who killed Henderson, or agreed or attempted to aid any rival gang member in murdering Henderson, a Gangster Disciple.” Nos. 1–95–3211, 1–95–3212 cons. (unpublished order under Supreme Court Rule 23).

We agree with the appellate court that defendants’ first degree murder convictions could not be based upon a theory of accountability as set forth in section 5–2(c), and the State does not contest this point. Instead, the State, in its cross-appeal, argues that section 5–2(a) of the accountability statute (720 ILCS 5/5–2(a) (West 1994)) is applicable here and that it should be employed to uphold defendants’ first degree murder convictions. Thus, we first address whether defendants’ murder convictions can be upheld under section 5–2(a).

As a preliminary matter, we note that while the State did not raise this issue on direct appeal, pursuant to Supreme Court Rule 318(a) the State, as appellee in this court, “may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal.” 155 Ill. 2d R. 318(a); see also 
People v. Schott
, 145 Ill. 2d 188, 201 (1991) (where the trial court is reversed by the appellate court and the appellee in that court brings the case here for further review, he may raise any question properly presented by the record to sustain the trial court’s judgment, even though that question was not raised or argued in the appellate court). Further, and contrary to defendants’ contention, this court is authorized by section 4(c) of article VI of the Illinois Constitution and Supreme Court Rules 315(a) and 604(a) to review judgments of the appellate court, including cases where the appellate court has reversed a criminal conviction. See 
People v. Schwartz
, 58 Ill. 2d 274, 275-77 (1974); Ill. Const. 1970, art. VI, §4(c); 177 Ill. 2d R. 315(a); 145 Ill. 2d R. 604(a).

Upon review of a question as to a defendant’s accountability for an offense, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See 
People v. Batchelor
, 171 Ill. 2d 367, 376 (1996). Section 5–2(a) provides that a person is legally accountable for the conduct of another when: “Having a mental state described by the statute defining the offense, he causes another to perform the conduct, and the other person in fact or by reason of legal incapacity lacks such a mental state.” 720 ILCS 5/5–2(a) (West 1994).

Here, the State contends that the trial court, sitting as trier of fact, found that: (1) defendants had the requisite mental state to commit murder, specifically knowledge that their actions created a strong probability of death or great bodily harm; (2) defendants’ conduct caused another to perform the conduct, namely, the shooting of Henderson; and (3) the person who performed the conduct in fact lacked the mental state, in that the Black Disciples returned fire in self-defense. Therefore, the State concludes, although the trial court never expressly referred to section 5–2(a) when making its ruling, because the court’s findings “are wholly consistent with the language of section 5–2(a), *** the trial court was relying upon the ‘innocent agent’ rule when it found defendants guilty of Henderson’s murder under an accountability theory.” While we acknowledge that what the trial court termed its “transferred accountability” theory appears to comport with the requisites of section 5–2(a), the question remains whether that section applies under the facts of this case.

The alternative basis for accountability set forth in section 5–2(a) is known as the “innocent agent” rule because it is most frequently encountered as liability based on inducing an “innocent agent,” such as a child below the age of criminal capacity or an insane person, to commit an act. See 720 ILCS Ann. 5/5–1, Committee Comments–1961, at 175 (Smith-Hurd 1993); see also 
People v. Whitmer
, 369 Ill. 317, 320 (1938) (conviction for forgery based on use of “innocent agent” to utter and pass instrument affirmed);
 People v. Mutchler
, 309 Ill. 207, 212-13 (1923) (conviction under indictment charging confidence game affirmed where defendant used “innocent third party” to gain confidence of bank and thereby cash fraudulent check); 
People v. Nunnley
, 34 Ill. App. 3d 4, 6 (1975) (although defendant’s conviction for criminal trespass to vehicles reversed based on insufficiency of evidence, court held that defendant would be deemed a principal if, without owner’s consent, defendant sold vehicle to “innocent agent” who subsequently entered vehicle without owner’s permission). However, the principle set forth in section 5–2(a), and exemplified by the cases cited above, contemplates that the person to be held accountable procured, induced or intended the innocent agent’s action. We are unwilling to find that Illinois’ accountability statute should apply to situations like the present one where the person to be held accountable neither intended the actor to perform as his agent nor sought the “caused” result. See
 People v. Dennis
, 181 Ill. 2d 87, 105 (1998) (holding accountable a defendant who neither intends to participate in the commission of an offense nor has knowledge that an offense has been committed does not serve the deterrent effect of our accountability statute).

The State contends that those forced by another to act in self-defense should be included among the “innocent agents” contemplated by section 5–2(a). However, the State presents no case law to support this expansion of accountability law, and we do not believe it warranted. Indeed, we find the appellate court’s reasoning as to section 5–2(c)’s inapplicablity here equally appropriate in a section 5–2(a) context:

“The trial judge’s comments indicate he believed Henderson’s death was a reasonably foreseeable result of defendants’ actions. Nevertheless, the concept of reasonable foreseeability (
i.e.
 proximate cause), while essential to a felony murder inquiry, has no place in accountability analysis ***. 
Cf. People v. Dennis
, 181 Ill. 2d 87, 105, 692 N.E.2d 325 (1998) (noting ‘[o]ur continued adherence to a proximate cause approach is further exemplary of how broadly we seek to extend the reaches of criminal liability in the case of felony murder,’ distinguishing accountability on the basis that 
‘[u]nlike felony murder, accountability focuses on the degree of culpability of the offender and seeks to deter persons from intentionally aiding or encouraging the commission of offenses.’); 
People v. Dekens
, 182 Ill. 2d 247, 252 *** (finding a charge of felony murder appropriate where the defendant’s intended victim shot and killed the defendant’s cofelon, since such a killing would be foreseeable); 
People v. Lowery
, 178 Ill. 2d 462, 469-70, 687 N.E.2d 973 (1997) (affirming defendant’s felony-murder conviction, based upon reasonable forseeability, where the intended victim of an armed robbery shot and killed an innocent bystander).” Nos. 1–95–3211, 1–95–3212 cons. (unpublished order under Supreme Court Rule 23).

 Thus, because holding defendants criminally culpable for a death resulting from an act of self-defense which they provoked is irreconcilable with our accountability statute, we decline to apply it in this context. See 
Dennis
, 181 Ill. 2d at 105-06. The facts of this case, being squarely in line with those of 
Dekens
 and 
Lowery
, suggest that defendants’ criminal liability for Henderson’s death falls within the parameters of felony murder, and not accountability, under either section 5–2(a) or (c). We therefore reject the State’s contention that the trial court’s verdict may be upheld based on section 5–2(a).

Next, we address defendants’ contention that the appellate court erred in remanding this cause for consideration of further proceedings on a charge of felony murder. When, as here, the issue raised is purely one of law, we review the record 
de novo
. 
People v. Daniels
, 187 Ill. 2d 301, 307 (1999). Upon review of the record, we agree with the appellate court that the trial court believed it was precluded from considering felony murder in this case because no felony-murder charge was included in defendants’ indictment. However, we cannot agree with the appellate court that the “proper remedy” in this situation was a remand to the trial court to determine whether defendants were prejudiced in their defense by the State’s failure to indict for felony murder.

As the appellate court correctly notes, in 
People v. Maxwell
, 148 Ill. 2d 116 (1992), and 
People v. Allen
, 56 Ill. 2d 536 (1974), this court held that, in certain circumstances, felony murder need not be specifically charged in the indictment in order for a defendant to be convicted of felony murder. Tho
se decisions were based on the reasoning that, under section 9–1 of the Criminal Code of 1961 (720 ILCS 5/9–1 (West 1994)), there is but one crime of murder and a defendant indicted under one or more of the subparagraphs of this section may be convicted under any one of the subparagraphs, and the jury may be so instructed, if the record supports such conviction and the defendant was not prejudiced in his preparation for trial or exposed to the risk of double jeopardy. See 
Maxwell
, 148 Ill. 2d at 133-37; 
Allen
, 56 Ill. 2d at 542-43. However, unlike the trial courts in 
Maxwell 
and 
Allen
, the court in the instant case refused to consider felony murder, and therefore we have no occasion to apply the standard of review set forth in those cases. Rather, here, because first degree murder is considered “one crime,” the trial court’s refusal to consider felony murder, its conviction of defendants for knowing murder, and the appellate court’s reversal of that conviction based on an insufficiency of the evidence act as a bar to defendants’ further prosecution for Henderson’s death.

“The fifth amendment of the United States Constitution states in pertinent part: ‘[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb ***.’ U.S. Const., amend. V. The same protections are also embodied in the Illinois Constitution. Ill. Const. 1970, art. I, §10.” 
Daniels
, 187 Ill. 2d at 309. This bar against double jeopardy derives from an intent to promote fairness and finality in legal proceedings, with the underlying idea being that the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense. See 
Daniels
, 187 Ill. 2d at 309.

In 
Daniels
, this court recently examined the bar against double jeopardy in the context of our first degree murder statute, explaining:

“Significantly, first degree murder is a single offense, and the different theories embodied in the first degree murder statute (720 ILCS 5/9–1 (West 1996)) are merely different ways to commit the same crime. 
Allen
, 56 Ill. 2d at 543. A conviction on any one of the theories of first degree murder operates to bar a second trial on a theory not prosecuted. 
Allen
, 56 Ill. 2d at 543. Thus, had the State charged defendant with intentional murder alone, and had the jury returned a not-guilty verdict, the State could not, in a later trial, seek to convict defendant of the same murder pursuant to a theory of felony murder or knowing murder. 
Allen
, 56 Ill. 2d at 543. Further, had defendant’s appeal of his convictions for intentional and knowing murder been unsuccessful, or if a reviewing court found the evidence insufficient to sustain those convictions, defendant could not be retried for the same murder on a different or separate theory of first degree murder.” 
Daniels
, 187 Ill. 2d at 316.

Given these precepts, we hold that here, where the appellate court and this court have found the evidence insufficient to sustain defendants’ convictions for knowing murder, any further consideration of their guilt on a “theory not prosecuted” would constitute an impermissible retrial. Because “the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, the only ‘just’ remedy available for that court is the direction of a judgment of acquittal.” 
Burks v. United States
, 437 U.S. 1, 18, 57 L. Ed. 2d 1, 14, 98 S. Ct. 2141, 2150-51 (1978). Additionally, regardless of whether the trial court’s refusal to consider felony murder was erroneous, “[t]o hold that a defendant waives his double jeopardy protection whenever a trial court error in his favor *** leads to an acquittal would undercut the adversary assumption on which our system of criminal justice rests [citation], and would vitiate one of the fundamental rights established by the Fifth Amendment.” 
Sanabria v. United States
, 437 U.S. 54, 78, 57 L. Ed. 2d 43, 62-63, 98 S. Ct. 2170, 2186 (1978). Indeed, the fundamental nature of the double jeopardy rule is manifested by its explicit extension to situations where an acquittal is based upon an egregiously erroneous foundation. 
Sanabria
, 437 U.S. at 64, 57 L. Ed. 2d at 53-54, 98 S. Ct. at 2178. Therefore, the appellate court erred in remanding for further proceedings on a charge of felony murder, and that portion of the appellate court’s decision is vacated.

Finally, defendants argue that the appellate court erred in affirming their convictions for aggravated battery with a firearm because: (1) defendants were not proved guilty beyond a reasonable doubt; (2) the appellate court affirmed the convictions based on facts contrary to those found by the trial court, in violation of due process and collateral estoppel principles; and (3) affirming their convictions based on an accountability theory is legally inconsistent with reversing their first degree murder convictions due to a lack of accountability, with codefendant Stofer’s acquittal, and with defendants’ acquittal on various other charges. We find none of these arguments persuasive.

In reviewing the sufficiency of the evidence to sustain a verdict on appeal, the relevant inquiry is “whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” (Emphasis in original.) 
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); 
People v. Thomas
, 178 Ill. 2d 215, 231-32 (1997); 
People v. Howery
, 178 Ill. 2d 1, 38 (1997). Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses. 
Thomas
, 178 Ill. 2d at 232. Indeed, it is the responsibility of the trier of fact to “fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” 
Jackson
, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. This same standard of review applies regardless of whether the evidence is direct or circumstantial (
Thomas
, 178 Ill. 2d at 232), and regardless of whether the defendant receives a bench or jury trial (
Howery
, 178 Ill. 2d at 38).

Applying this standard, we must reject defendants’ claim that they were not proven guilty beyond a reasonable doubt. The evidence presented at trial, considered in the light most favorable to the prosecution, shows that around 5:30 p.m. on June 25, 1994, members of the Gangster Disciples street gang entered the Black Disciples territory at 100th Street from Michigan Avenue in order to retaliate for an earlier fight between members of their respective gangs. Although the confrontation was initially limited to arguing and a fist fight between Earl, a Gangster Disciple, and Jimmy, a Black Disciple, once Jimmy started winning the fight, the situation erupted as 50 to 60 Gangster Disciples tried to encircle the 10 to 13 Black Disciples and push them back toward State Street. At about the same time, defendant Cooper ran out of the alley with a gun and joined the crowd of Gangster Disciples. Codefendant Stofer and defendant Starnes then each pulled out weapons and Starnes and Cooper began shooting at the Black Disciples. Everyone scattered once the shooting started and Robinson, a Black Disciple, was struck twice, once in each leg. This eyewitness evidence was corroborated by positive results on the gunshot residue tests performed on both Cooper and Starnes. Thus, a rational trier of fact could find that both defendants committed the offense of aggravated battery with a firearm when they knowingly discharged their firearms, thereby causing injury to Robinson. See 720 ILCS 5/12–4.2(a)(1) (West 1994).

Indeed, the record reveals that the trial court, sitting as trier of fact, expressly found that both Cooper and Starnes were armed at the time of the shooting and that defendants were the aggressors, firing the first shots of the fray in the direction of the Black Disciples, including Robinson. These findings were based on the testimony of, among others, the victim, Charles Robinson, who stated that he knew both defendants as members of the Gangster Disciples and observed Starnes standing on the street during the fight while Cooper ran from the alley into the crowd. Robinson also testified that he saw both defendants shooting at the Black Disciples. Similarly, State’s witness Brandon Green testified that he saw Starnes on the street before the shooting started and then saw Starnes shooting at Robinson with a gun in each hand. Green also testified that he first saw Cooper by the alley and then saw Cooper, hands in his pants and holding something that looked like the tip of a gun, run into the crowd. Additionally, James Carr testified that, as he drove down 100th Street, he saw Starnes walking very calmly while either reloading a gun or putting a gun into his pocket. Both Robinson and Green knew defendants before the shooting and were able to identify them by name, and Carr identified Starnes from a lineup the day after the shooting. Thus, while defendants assert that the trial court’s findings must be overturned because the State’s witnesses were not credible and their identifications of defendants were vague and uncertain, we see no basis for rejecting the trial court’s finding that the State’s witnesses were credible and corroborated one another. See 
People v. Phillips
, 127 Ill. 2d 499, 514 (1989) (the weighing of the credibility of witnesses and resulting conflicts or inconsistencies in the testimony is within the exclusive province of the trier of fact).

Defendants also contend that due process and collateral estoppel principles bar the appellate court’s affirmance of defendants’ convictions based on the finding that Starnes was the shooter, where the trial court did not conclude which defendant actually shot Robinson. However, based upon our review of the record, including the appellate court’s decision, we agree with the State that the appellate court was simply applying the relevant standard of review when it held that a rational trier of fact could have found that Starnes was the shooter and Cooper was accountable. See 
Jackson
, 443 U.S. at 319 n.13, 61 L. Ed. 2d at 574 n.13, 99 S. Ct. at 2789 n.13 (the question whether the evidence is constitutionally sufficient is wholly unrelated to the question of how rationally the verdict was actually reached; just as the standard of review does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the fact finder).

Finally, defendants argue that affirming their aggravated battery with a firearm convictions based on an accountability theory is legally inconsistent with other findings made by the lower courts. First, defendants assert that the failure to identify which defendant shot Robinson prevents either defendant from being the principal and prevents either from being accountable as an accomplice. Thus, just as the evidence was insufficient to establish defendants’ accountability for first degree murder, it was also insufficient to establish that either defendant was accountable for aggravated battery with a firearm upon Robinson. However, the mere fact that the appellate court reversed the first degree murder convictions for Henderson’s death does not require a similar reversal of the aggravated battery with a firearm convictions, because the theories of accountability underlying those convictions were different.

While the appellate court, and this court, have concluded that defendants could not be held accountable for the conduct of their intended victims, the Black Disciples who shot and killed Henderson, the appellate court can be affirmed on defendants’ aggravated battery with a firearm convictions based on defendants’ accountability for 
each other’s
 conduct which resulted in injury to Robinson. Our examination of the record shows that both defendants were properly found guilty of aggravated battery with a firearm under section 5–2(c) of the accountability statute.

As earlier set forth, a person is legally accountable for the conduct of another when, either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense. 720 ILCS 5/5–2(c) (West 1994). Although mere presence at the scene of an offense is not by itself sufficient to sustain a conviction on an accountability theory, an accused may be deemed accountable for acts performed by another pursuant to a common plan or purpose. 
People v. Taylor
, 164 Ill. 2d 131, 140-41 (1995); 
People v. Furby
, 138 Ill. 2d 434, 456 (1990). The “common design” rule provides that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts. 
In re W.C.
, 167 Ill. 2d 307, 337 (1995). Proof of the common purpose or design need not be supported by words of agreement, but may be drawn from the circumstances surrounding the commission of the unlawful conduct. 
Taylor
, 164 Ill. 2d at 141
; 
People v. Reid
, 136 Ill. 2d 27, 62 (1990). Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another. 
In re W.C.
, 167 Ill. 2d at 338; 
Taylor
, 164 Ill. 2d at 141. A conviction under accountability does not require proof of a preconceived plan if the evidence indicates involvement by the accused in the spontaneous acts of the group. 
In re W.C.
, 167 Ill. 2d at 338.

Further, and contrary to defendants’ contention, a defendant may be found guilty under an accountability theory even though the identity of the principal is unknown. In 
People v. Banks
, 260 Ill. App. 3d 464, 468 (1994), the appellate court held that the evidence supported the defendant’s conviction for aggravated battery with a firearm based on accountability, although the bullet removed from the victim came from a different gun than defendant’s weapon, where the evidence showed the defendant was present at the scene of the crime, actively participated in and made no attempt to stop the gang-related shooting, fled from the scene and did not report the crime to police. Similarly, in 
People v. Cooks
, 253 Ill. App. 3d 184, 189-90 (1993), the appellate court found the defendant was properly held accountable for a murder committed by an unknown gunman where the defendant gathered fellow gang members to retaliate for an earlier gang-related altercation, facilitated the murder by firing the first shot, which wounded the victim in the leg, assisted the shooter by not intervening on the victim’s behalf, and fled the scene, because such evidence sufficiently demonstrated a common design and a community of unlawful purpose between the defendant and the unknown assailant.

Here, although the trial court did not make a finding as to which defendant shot Robinson, the court expressly stated that the shots were fired by one of them. Additionally, because the evidence, viewed in the light most favorable to the prosecution, established that defendants were acting in concert in order to retaliate against a rival gang, it is clear that they shared a common design. Both defendants voluntarily attached themselves to a group bent on illegal activity when they, armed with weapons, joined fellow Gangster Disciples in rival gang territory, actively participated in shooting at Black Disciples, fled from the scene, and failed to report the crime to police. See 
Taylor
, 164 Ill. 2d at 141 
(proof that the defendant was present during the perpetration of the offense, that he fled from the scene, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant’s legal accountability). Therefore, the fact that the trial court did not identify the shooter in the instant case does not prevent a finding of each defendant’s guilt under the common design theory of accountability. See 
In re W.C.
, 167 Ill. 2d at 338 (accountability may be established through a person’s knowledge of and participation in the criminal scheme, even though there is no evidence that he directly participated in the criminal act itself).

Defendants also argue that the trial court’s acquittal of codefendant Stofer is legally inconsistent with defendants’ aggravated battery with a firearm convictions. However, the trial court’s decision to acquit Stofer is supported by the lack of evidence that he ever fired a weapon. Although Stofer was seen holding a gun, no witness testified that he fired it, in contrast to testimony that both defendants were seen firing guns at the Black Disciples. Thus, we agree with the State that, contrary to defendants’ assertions, the evidence against Stofer was 
not
 “indistinguishable” from the evidence against defendants, and the verdicts rendered by the trial court were not legally inconsistent. See 
People v. Stock
, 56 Ill. 2d 461, 465-66 (1974).

Similarly, there is nothing inconsistent in the trial court’s ruling that defendants were guilty of aggravated battery with a firearm, but not guilty of the other charges upon which they were tried. Verdicts that acquit and convict a defendant of crimes composed of different elements, but arising out of the same set of facts, are not legally inconsistent. 
People v. Klingenberg
, 172 Ill. 2d 270, 274 (1996). Our review of the record herein shows that the offenses of which defendants were acquitted, 
i.e.
, the intentional murder of Henderson, the intentional and knowing murder of Kevin Harris, the attempted first degree murder of Robinson, the attempted first degree murder of Maurice Paino, and the aggravated battery with a firearm of Paino, all required proof of different elements or were distinguishable on the facts. For example, the intentional murder and attempted murder counts required a different mental state than that necessary for defendants’ conviction of aggravated battery with a firearm of Robinson. Additionally, there is no inconsistency in the trial court’s finding that defendants were not guilty of Kevin Harris’ murder because the facts showed that the shots fired at Harris came from a different direction than those which injured Robinson, and the court was therefore not satisfied beyond a reasonable doubt that “the murder of Kevin Harris was as a result of the actio
ns done by [defendants].” In conclusion, after examining all of defendants’ contentions, we find no error in the appellate court’s affirmance of defendants’ aggravated battery with a firearm convictions.

Accordingly and for the foregoing reasons, we affirm the judgment of the appellate court affirming defendants’ convictions for aggravated battery with a firearm and reversing defendants’ convictions for first degree murder, and vacate that portion of the appellate court’s judgment remanding the cause for further proceedings.

Appellate court judgment

affirmed in part and

 vacated in part.