THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN SPARKS, Defendant-Appellant.

Second District    No. 2—01—0247

Opinion filed November 27, 2002.

BOWMAN, J., dissenting.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Lawrence D. Wechter, of Law Office of Larry Wechter, of Geneva, for appellant.

Michael P. Bald, State's Attorney, of Freeport (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Sharmila Roy, of Lehrer & Canavan, P.C., of Wheaton, for the People.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Following a jury trial, defendant, Kevin Sparks, was convicted of unlawful delivery of a controlled substance within 1,000 feet of a church (720 ILCS 570/407(b)(2) (West 2000)) and sentenced to six years' imprisonment. On appeal, defendant argues that (1) the State failed to lay an adequate foundation to support its measurements of the distance from the site of the drug transaction to the alleged church; and (2) he was not proved guilty beyond a reasonable doubt. We affirm.

On November 9, 2000, defendant was charged by information with one count of unlawful delivery of a controlled substance within 1,000 feet of a church (720 ILCS 570/407(b)(2) (West 2000)). The charge alleged that on July 20, 2000, defendant delivered less than one gram of a substance containing cocaine to another person while defendant was within 1,000 feet of a Salvation Army chapel in Freeport.

At trial, defendant admitted that, on the date in question, he delivered less than one gram of cocaine to Gregory Dahm, who was working undercover for the Freeport police department. The delivery occurred at the intersection of State and Stephenson Streets in Freeport. In light of defendant's admission, the remaining evidence at trial focused on whether the Salvation Army chapel was a church and whether it was located within 1,000 feet of the site of the drug transaction.

David Bump testified that he was an ordained minister for the Salvation Army. Bump testified that he worked at the Salvation Army's building located at the intersection of Galena and Exchange Streets in Freeport. Bump testified that a chapel was located in the building where he conducted weekly religious services. The type of religious services Bump conducted in the chapel were similar to those held in Methodist churches. The Salvation Army's religious services featured sermons, Bible readings, singing, and Sunday school. Bump testified that the chapel was used exclusively for religious services. Bump also indicated that other parts of the Salvation Army's building were used for religious purposes, including Sunday school and Bible study. The Salvation Army's building also contained a boardroom, a soup kitchen, and a dining room. On cross-examination, Bump acknowledged that no religious services were being conducted at the time of defendant's drug transaction on July 20, 2000.

Freeport police officer Mark Otto testified that he had been certified to operate a measurement tool known as a "Light Detection and Ranging Device" (LIDAR). Officer Otto explained that a LIDAR contains a lens that emits an impulse of light that strikes the object being measured. The LIDAR calculates the distance to the object being measured based upon the amount of time that it takes the light to travel to the object and back again. Officer Otto testified that a LIDAR's accuracy should be periodically tested by using the device to measure a known distance.

Freeport police officer Andrew Schroeder testified that he was trained to use a LIDAR by Officer Otto. Officer Schroeder testified that he assisted Officer Thomas Dyra in measuring (1) the distance between the entrance to the Salvation Army chapel on Exchange Street and the intersection of Exchange and State Streets, and (2) the distance between the intersection of Exchange and State Streets and the intersection of State and Stephenson Streets where the drug transaction occurred. Officer Schroeder tested the LIDAR before using it and determined that it was working properly. In order to take the measurements, Officer Dyra acted as a fixed point of reference and stood at the far point of the distance to be measured, and Officer Schroeder aimed the LIDAR's light beam at Dyra. The officers measured the distance between the chapel on Exchange Street and the State-Exchange intersection at 836 feet and the distance between the State-Exchange intersection and the State-Stephenson intersection at 239 feet. Officer Schroeder testified that the angle formed by State and Exchange Streets was 90 degrees. On cross-examination, Officer Schroeder acknowledged that the angle may not have been precisely 90 degrees.

On redirect, Officer Schroeder was shown an aerial photograph of the area in question. Officer Schroeder testified that the angle between State and Exchange Streets looked like a right angle, as it was similar to the "corner of the chalkboard in the courtroom" and "the corners of the doors."

Officer Dyra testified that he took measurements with a "rotary wheel" along Exchange Street from the chapel to the intersection of Exchange and State Streets, and then from that intersection to the intersection of State and Stephenson Streets. A "rotary wheel" is a device used to measure distances that consists of a wheel attached to a handle. The handle contains a meter that measures the distance a person travels while rolling the wheel along the ground. The distances recorded by Officer Dyra using the rotary wheel were 844 and 236 feet respectively. Officer Dyra also testified that the corner of State and Exchange Streets formed a right angle. Officer Dyra determined that

the intersection formed a right angle by placing a carpenter's square on an aerial photograph of the intersection. Officer Dyra then used the geometrical equation known as the Pythagorean theorem to calculate the direct distance between the chapel and the site of the drug transaction. Using the measurements recorded by the LIDAR, he calculated a direct distance of 869.5 feet; using the measurements recorded by the rotary wheel, he calculated a direct distance of 876.3 feet.

On cross-examination, Officer Dyra acknowledged that the wheel on the rotary wheel could have been worn. If the wheel was worn, he acknowledged, the distance measured by the circumference of the wheel could have been inaccurate.

Stephenson County chief assessor Ronald Kane testified that he maintained aerial photographs ("aerial maps") of the entire county, and that property boundaries were drawn upon the photographs for assessment purposes. Kane testified that these aerial maps were maintained as public records. He identified the book that contained all of the aerial maps of the county as well as the aerial maps of the area in question. The scale of the map was 1 inch for every 100 feet.

Laurie Heiden testified that she had worked in the assessor's office for more than five years. Heiden testified that she photocopied the relevant aerial maps and used a scaled ruler to measure the distance between the corner of the Salvation Army's lot and the northwest corner of State and Stephenson Streets. She measured the distance along a straight line between the two points and found that the distance was 795 feet. Heiden also measured the distance between the intersections of Exchange and Galena Streets and State and Stephenson Streets as 940 feet. Heiden testified that the chapel was not quite at the intersection of Exchange and Galena Streets and that the distance between the chapel and the drug transaction was more than 795 feet but less than 940 feet.

Following deliberations, the jury found defendant guilty of unlawful delivery of less than one gram of a substance containing cocaine within 1,000 feet of a church. After a sentencing hearing, the trial court sentenced defendant to six years' imprisonment. This timely appeal followed.

■ Defendant's first contention on appeal is that the State failed to lay an adequate foundation to support its measurement evidence as required by Rule 703 of the Federal Rules of Evidence (Fed. R. Evid. 703). See *Wilson v. Clark*, 84 Ill. 2d 186, 196 (1981) (adopting Rule 703). Rule 703 requires that an expert's testimony must be supported with an evidentiary foundation indicating that the facts and data relied upon by the expert are of the type reasonably relied upon by

other experts in the field. Fed. R. Evid. 703. Specifically, defendant argues that the State failed to introduce any evidence indicating that LIDARs, rotary wheels, and aerial maps are accurate measuring devices. Defendant also argues that the State failed to introduce evidence that the Freeport police officers were adequately trained in the use of LIDARs and rotary wheels. Finally, defendant argues that Officer Dyra's calculations based on the Pythogorean theorem were unreliable and that the State failed to establish that the angle formed by the intersection of Exchange and State Streets was 90 degrees.

Defendant has waived this issue for our review because he failed to object to the foundation of this evidence below. This court has previously held that a defendant's objection to the foundation for the admission of evidence is waived on appeal when no objection on foundational grounds was made to the evidence in the trial court. *People v. Bostelman*, 325 Ill. App. 3d 22, 30 (2001). A timely objection in the trial court as to the foundation of technical evidence is necessary to give the State the opportunity to correct any deficiency in the proof. *People v. Bynum*, 257 Ill. App. 3d 502, 514-15 (1994) (holding that defendant waived any Rule 703 objection to an expert's use of a gas chromatography mass spectrometer to determine the presence of PCP in a substance by failing to object at trial). Moreover, the State's failure to lay the proper technical foundation under Rule 703 is not reviewable under the plain error doctrine. *Bynum*, 257 Ill. App. 3d at 515.

■ Defendant alternatively contends that his trial counsel's failure to object to the State's foundation constituted the ineffective assistance of counsel. To prevail on a claim of the ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for defense counsel's errors, a different result would have been achieved. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2069 (1984).

■ We do not believe that defense counsel was deficient for failing to object to the foundation of the State's measurement evidence. Decisions such as what matters to object to and when to object are, by and large, matters of trial strategy. *People v. Pecoraro*, 175 Ill. 2d 294, 327 (1997). The evidence indicated that Officer Schroeder had received training on the proper operation and use of the LIDAR device and that he tested the device immediately before taking the measurements. Moreover, the aerial map provided by the assessor's office was a public record, and Kane testified in detail how the map was constructed and how he checked the accuracy of the map's scale by measuring with a scaled ruler the distances written on the map. The

aerial map, as a public record, is presumed reliable. See *Steward v. Crissell*, 289 Ill. App. 3d 66, 72-73 (1997) (the party challenging a public record bears the burden of presenting evidence that the record is unreliable).

Additionally, Officer Dyra testified that he was familiar with the operation of the rotary wheel and explained that the rotary wheel is a measurement device commonly used in police work. Although defendant asserts the possibility that the tread on the rotary wheel might have been worn, we note that the measurements taken by the rotary wheel substantially conformed to those obtained from the LIDAR device and the aerial map. Finally, as for the angle formed by the intersection of Exchange and State Streets, Officer Dyra confirmed that the angle was 90 degrees by measuring the angle using a carpenter's square on the aerial map. Based on the foregoing testimony, we conclude that the State provided a sufficient foundation for its measurement evidence and that defendant was not deprived of the effective assistance of counsel.

■ Defendant's second contention on appeal is that the State failed to prove him guilty beyond a reasonable doubt. In considering defendant's contention, we note that it is not the function of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). We, as a reviewing court, are not to substitute our own judgment for that of the jury. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

■ Section 401(d) of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/401(d) (West 2000)) provides that it is unlawful for any person to knowingly deliver less that one gram of certain controlled substances. A violation of section 401(d) is classified as a Class 2 felony. Section 407(b)(2) of the Act enhances the classification of a section 401(d) offense to a Class 1 felony if the violation occurs "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship." 720 ILCS 570/407(b)(2) (West 2000). In this case, defendant does not dispute that he delivered less than one gram of cocaine in violation of section 401(d) of the Act. Rather, defendant argues that the State failed to prove that he violated section 407(b)(2) of the Act by delivering the cocaine within 1,000 feet of a church. Specifically, defendant argues that the State failed to prove that the

Salvation Army chapel was a "church" for purposes of the Act. Defendant additionally argues that, even assuming the Salvation Army chapel was a church, the State failed to prove that the delivery took place within 1,000 feet of the chapel.

The term "church" is not defined by the provisions of the Act. However, the meaning of this term may be gleaned from the other language of section 407(b)(2). As noted above, section 407(b)(2) enhances a delivery offense when the delivery occurs within 1,000 feet of a "church, synagogue, or other building, structure, or *place used primarily for religious worship.*" (Emphasis added.) 720 ILCS 570/ 407(b)(2) (West 2000). Based on this statutory language, we believe that the legislature intended the term "church" to mean a "place used primarily for religious worship." See *People v. Woodard*, 175 Ill. 2d 435, 443 (1997) (stating that the best guide to interpreting a statute's meaning is the statute's own plain language). Additionally, we note that Black's Law Dictionary similarly defines the term "church" as a "place where persons regularly assemble for worship." Black's Law Dictionary 242 (6th ed. 1990).

We therefore believe that the appropriate focus in determining whether a place falls within the definition of a "church" for purposes of the statute is its "primary" use. If the State proves that the primary use of the place in question is for religious purposes, then the enhancement provision applies. Although certain traditional physical characteristics such as a steeple and stained glass may help a fact finder identify a place as a church, the presence of such characteristics is not required under the statute. Similarly, there is no statutory requirement that the official title of the place in question have the word "church" in its name. We do not believe that the legislature intended to limit the meaning of the term "church" to a "building, structure, or place" possessing certain specific physical characteristics and nomenclature. Rather, the appropriate focus must be on the manner in which the place is used, *i.e.*, whether its primary use is for religious worship.

■ After reviewing the evidence appearing in the record, we conclude that the State proved beyond a reasonable doubt that the Salvation Army chapel was a "place used primarily for religious worship." 720 ILCS 570/407(b)(2) (West 2000). As detailed above, Bump testified that he was an ordained minister and that he conducted weekly religious services in the chapel. These services were similar to those conducted in Methodist churches and featured sermons, Bible readings, and singing. Bump testified that the chapel was used exclusively for the religious services. Despite the designation of "chapel" and the lack of a steeple and stained glass windows, the

undisputed evidence established that the sole purpose of the chapel was to conduct religious services. Because the sole purpose of the chapel was to conduct regular worship services, we believe that a reasonable jury could have concluded that the chapel was a "church."

Defendant argues that the chapel was not a church because it was only one part of the Salvation Army building. Defendant notes that numerous nonreligious activities occurred in the other parts of the building, including a food pantry, soup kitchen, and other social services. Defendant also notes that religious services were held in the chapel only weekly. We find these arguments unavailing. Although the Salvation Army chapel was only part of the Salvation Army's building, the chapel was nonetheless a place primarily used for public religious worship. The evidence at trial demonstrated that people came to the chapel on a weekly basis for the sole purpose of attending religious services. We note that churches often consist of numerous rooms and buildings and that religious organizations often conduct other social service activities in addition to worship. All of these activities were related to the Salvation Army's religious mission and did not relate to some commercial or other purpose. As the dissent notes, the Salvation Army is a "religious movement." See *Salvation Army v. Department of Revenue*, 170 Ill. App. 3d 336, 338 (1988). Moreover, this court has previously held that, for purposes of section 407(b)(2), religious services need not be in session at the time the unlawful delivery occurred. See *People v. Daniels*, 307 Ill. App. 3d 917, 929 (1999). Accordingly, despite the fact that services in the chapel are conducted only weekly, we hold the Salvation Army chapel is nonetheless a "church" for purposes of the Act.

■ We next consider whether the State proved that the delivery took place within 1,000 feet of the chapel. Defendant argues that the distance to travel on foot between the chapel and the location of the drug transaction was in excess of 1,000 feet. Defendant argues that it was improper for the State to measure the distance between the two locations using a straight line because various buildings create an obstruction. Defendant points out that these buildings would prevent someone from walking in a straight line from the chapel to the location of the drug transaction.

Although this issue appears to be a matter of first impression in Illinois, we believe that our resolution of the question is controlled by the language of the statute. Section 407(b)(2) prohibits delivery of certain controlled substances "within 1,000 feet of the real property comprising any church." We find this statutory language to be clear and unambiguous. The language plainly prohibits delivery within 1,000 feet of a church. Where the language of a statute is clear and

unambiguous, we are obliged to give it effect as written without reading into it exceptions, limitations, or conditions that the legislature did not express. *Daniels*, 307 Ill. App. 3d at 928. Section 407(b)(2) contains no language requiring that the distance between the site of the delivery and the church be measured according to the shortest route traveled on foot. Accordingly, we hold that the 1,000-foot distance should be measured as a straight line from the church and not according to pedestrian routes.

Reviewing the evidence introduced at trial, we conclude that a reasonable jury could have concluded that the drug transaction took place within 1,000 feet of the Salvation Army chapel. The county assessor's aerial map showed that the distance between the chapel and the site of the delivery was less than 1,000 feet. This measurement was confirmed by two independent measurements taken by the Freeport police department. We therefore conclude that the State's evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

For the foregoing reasons, we affirm the judgment of the circuit court of Stephenson County.

Affirmed.

GEIGER, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent.

I disagree with the majority's finding that the Salvation Army chapel is a "church" for purposes of section 407(b)(2) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/407(b)(2) (West 2000)). According to the Act, any person who violates subsection (d) of section 401:

> "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship *** is guilty of a Class 1 felony, the fine for which shall not exceed $250,000." 720 ILCS 570/407(b)(2) (West 2000).

I agree with the majority that the legislature intended the term "church" to mean a "place used primarily for religious worship." However, I do not agree with the majority's conclusion that the jury could have found that the "chapel" was a "church" because the sole purpose of the chapel was to conduct regular worship services. The effect of the majority's reasoning is to permit the term "church" to encompass other "places used primarily for religious worship." Essentially, this interpretation broadens the scope of the word "church"

to include "chapel" and arguably any other "place used primarily for religious worship."

Moreover, Black's Law Dictionary defines "chapel" as "[a] place of worship; a lesser or inferior church, sometimes a part of or subordinate to another church." Black's Law Dictionary 232 (6th ed. 1990). As evidenced by its definition, the word "chapel" is distinct from the word "church" in that it is placed in a lesser category than a "church." While the majority's lack of differentiation between the words "church" and "chapel" is of little consequence when the facts involve a church or synagogue housing a smaller chapel, the distinction becomes important here. In this case, it is clear from the evidence that the Salvation Army building possesses no attributes of a "place used primarily for religious worship." Of critical importance are the photographs of the building, entered into evidence, which indicate absolutely no hint of the religious activity held therein. For example, nowhere in the pictures do there appear any special features characteristic of a church, such as a steeple, stained glass window, or large wooden entry door. Even the large sign located above the separate entrance to the chapel, which reads "The Salvation Army Corps Community Center," is not indicative of a church. Although I agree with the majority that there is no statutory requirement that a "church" possess specific physical characteristics, it is important to recognize that the building in question possesses not one feature indicative of a church.

In sum, I believe the majority's conclusion that a "chapel" is a "church" dangerously enhances the delivery offense beyond the scope intended by the legislature. Presumably, any delivery within 1,000 feet of a chapel, despite its location or indicia of religious worship, would be in violation of the Act. For example, a chapel located on the thirtieth floor of the Empire State Building, or in a large shopping mall, would conceivably fall under the statute. In short, I fear that such a broad definition of "church" would not encompass the intent of the legislature and would result in applying this enhanced criminal offense in too many instances where a nonenhanced delivery charge would suffice.

In addition, the majority in this case need not stretch the definition of "chapel" to be a "church" for purposes of the Act. The statutory language in section 407(b)(2) clearly addresses this situation by stating that a delivery offense is enhanced when the delivery occurs within 1,000 feet of a "church, synagogue, *or other building, structure, or place* used primarily for religious worship." (Emphasis added.) 720 ILCS 570/407(b)(2) (West 2000). Rather than find a "chapel" to be a "church," a more reasonable analysis of the statutory language would consider whether the Salvation Army was a "building" used "primarily

for religious worship" within the meaning of the Act. 720 ILCS 570/407(b)(2) (West 2000).

In classifying the Salvation Army as a "building" under the statute, I do not believe the State proved beyond a reasonable doubt that the Salvation Army building was used "primarily for religious worship" (720 ILCS 570/407(b)(2) (West 2000)). On a challenge to the factual sufficiency of the evidence to support a conviction, the relevant inquiry is whether any reasonable fact finder could have found the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the prosecution. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Even if the sole purpose of the chapel was to conduct religious services, which were held only twice a week, the chapel was only one part of a much larger building not used primarily for religious worship. As the Salvation Army minister testified, "[W]e use the whole building for different things. It just depends on what the day is as to what parts of the building is [*sic*] used." According to the minister, the Salvation Army structure was considered one building used for a variety of activities. The record is clear that this particular Salvation Army building supported youth services, a soup kitchen and a food pantry. As a result, the primary use of the majority of the building was something other than religious worship. In addition, as stated earlier, the photographs of the building showed no features typical of a place used primarily for religious worship. Thus, even when viewing the evidence in the light most favorable to the prosecution, I do not believe a reasonable fact finder could have found beyond a reasonable doubt that the Salvation Army building was "used primarily for religious worship."

Finally, as defendant argues, this court may take judicial notice of matters of common knowledge or facts that are easily verifiable. *Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago*, 230 Ill. App. 3d 591, 597 (1992). Generally speaking, the Salvation Army is a religious movement which provides an array of social services to the poor. *Salvation Army v. Department of Revenue*, 170 Ill. App. 3d 336, 338 (1988). However, the fact that the Salvation Army has a religious purpose does not mean that the building in question is a "church" used "primarily for religious worship." The facts in this case, as mentioned earlier, show that this particular Salvation Army building served a variety of purposes, both religious and charitable. As defendant notes, virtually any person out and about during the Christmas season has witnessed bell-ringers from the Salvation Army soliciting donations for those in need. Because the Salvation Army is known universally for its contributions to those in need, perhaps even more than its religious mission, I disagree with the majority's position that its facilities in this case were used primarily

for religious worship. Consequently, I do not believe that the evidence presented, specifically noting the appearance of the building and the testimony of the minister as to the variety of activities held therein, supports a finding that the building in question was used primarily for religious worship.

In sum, I disagree with the majority in this case that the jury could have concluded that the "chapel" was a "church." In addition, I believe that a reasonable fact finder, viewing the evidence in a light most favorable to the State, could not have found beyond a reasonable doubt that the Salvation Army building in question was "used primarily for religious worship" within the meaning of the Act. Accordingly, I would reverse defendant's conviction and sentence for violation of section 407(b)(2) of the Act (720 ILCS 570/407(b)(2) (West 2000)), find defendant guilty of delivering less than one gram of cocaine pursuant to section 401(d) of the Act (720 ILCS 570/401(d) (West 2000)), a Class 2 felony, and remand the cause to the trial court for sentencing for that offense.