2022 IL App (2d) 200087-U
No. 2-20-0087
Order filed January 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of DeKalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-203 |
| JOSHUA J. INYANG, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State presented sufficient evidence to convict defendant of aggravated battery by strangulation and no error was committed in admitting police testimony as to the nature and cause of defendant's wounds that was elicited by defense counsel.

¶ 2    Following a bench trial, defendant Joshua Inyang was found guilty of aggravated battery by strangulation (720 ILCS 5/12-3.05(a)(5)) (West 2016)) and sentenced to probation for 24 months. Defendant argues two issues on appeal: (1) that the State did not prove the element of intent for strangulation beyond a reasonable doubt, and (2) that the trial court committed plain

error when it improperly considered expert testimony on the nature of defendant's injuries. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      Following an incident with the victim, O.A., defendant was charged by indictment with one count of aggravated domestic battery (720 ILCS 5/12-3.3(a)(5) (West 2016)), one count of aggravated battery (*id.* § 12-3.05(d)(2)), two counts of domestic battery (*id.* § 12-3.2(a)(1), (a)(2)), and one count of criminal damage to property (*id.* § 21-1(a)(1)). Defendant pleaded not guilty.

¶ 5      At defendant's bench trial, O.A. testified as follows. O.A. met defendant at an event and the two had been engaged in a sexual relationship for approximately eight months. On March 19, 2017, defendant drove to O.A.'s apartment in the early morning hours, and the two returned to his residence. They then had sex.

¶ 6      Afterwards, O.A. remarked to defendant that she had missed her period. This angered defendant and he told O.A. to " 'have an abortion[.]' " O.A. stated that was against her beliefs. The two began to argue and defendant threw O.A.'s phone, which broke the screen. The argument became louder and defendant pushed O.A.; he told her to leave and to " 'walk home.' " Defendant offered to drive O.A. home, but she did not feel safe with him. Because her phone was broken, she was unable to call for a ride, and defendant refused to call one for her. Then, defendant "started to get physical" with O.A. She attempted to defend herself. At some point, defendant punched her in the stomach. Then, he "pushed [her] to the bed and choked [her] with two hands" as he was leaning over her.

¶ 7      O.A. demonstrated for the court how defendant choked her and stated that she was unable to breathe. Defendant was larger than O.A. and she attempted to scratch his hands and arms to get him off her. With his hands on O.A.'s neck, defendant asked, " 'If I let go, would you leave my

house?' " O.A. nodded yes and defendant let her go. O.A. estimated that defendant's hands were on her neck for one to two minutes. After defendant released his grip, he said, " 'You should have seen the way your eyes rolled back.' "

¶ 8    Afterwards, O.A. felt pain in her neck, was unable to catch her breath, and was unable to speak correctly. Defendant again told O.A. to leave, but O.A. noted that it was about 3:00 a.m. and her phone was now broken. O.A. insisted that defendant call the police, but he did not. Eventually, defendant's friend (Terrence Walker) came downstairs to see what the commotion was. Defendant explained the story to his friend and would not let O.A. tell her side of it. O.A. asked defendant and his friend to call the police, but defendant refused, and his friend did as well because he had a warrant out for him.  Defendant then pulled O.A. upstairs by her hair and also dragged her by the leg. Defendant eventually threw O.A. out of his house. O.A. knocked on the door of  a neighbor who called the police.

¶ 9    On cross-examination, O.A. stated that she and defendant had been "intimate" but was unsure as to whether they were dating and did not recall talking with defendant about his girlfriend. O.A. also acknowledged that she did not tell the police that defendant suggested she have an abortion and that the police arrived at around 7 a.m. On redirect, O.A. stated that she might have left some details out of her statement to the police because she was "angry[,]" "emotional[,]" and felt "like somebody just really beat [her] up." The following week, O.A. obtained an order of protection. In her application for the order, she wrote that after informing defendant that she had missed her period: "Josh began to get really mad at me and told me that I should punch myself in the stomach, drink liquor[,] and also stated that I should fall down the stairs and that he would push me[.]"

¶ 10    Officer Phillip Brown testified that he had been a police officer with the City of DeKalb for 13 years. Brown was dispatched to defendant's apartment at approximately 7 a.m. on March 19, 2017. There, Brown met both O.A. and defendant, and took their statements. Defendant denied choking O.A. to Brown, but acknowledged that while "he was trying to push her off of him he may have pushed her by the neck."

¶ 11    Brown identified photos depicting small scratches on defendant's outer left forearm and right hand. The prosecutor asked Brown about his training and on-the-job experience about "wounds of that nature[.]" The prosecutor asked if Brown had a "view" about defendant's injuries. Brown began to answer, "When I looked at those, it appeared that someone—" Defense counsel objected to foundation and noted that Brown had not been tendered as an expert witness. The prosecutor responded that she would lay more foundation and began to ask another question without the court ruling on the objection.

¶ 12    The prosecutor then asked, and Brown answered as follows:

"Q. Officer Brown, what has your training been, if any, in regard[ ] to identifying certain injuries or wounds to a particular individual?

A. Other than my personal experience on how I have witnessed injuries to have occurred and how they've been relayed to me, how those injuries have occurred to individuals while doing this job for the past 15 years, the only other training I've had is what I received at the academy.

Q. What did they teach you at the academy?

A. I remember that defensive wounds are usually going to be on the outside of somebody's forearms. Offensive wounds are usually going to be on their hands, on the outer—like knuckles and outsides of their hands.

> Q. And you indicated as far as your on-the-job training and experience with investigating certain types of cases and investigating injuries to a person and how someone relays those injuries to you as an officer, do these injuries to the defendant's hands match up to what [O.A.] had told you had occurred that day?
>
> A. Yes, it does."

With that, the State moved to introduce the pictures of defendant from that morning into evidence, and tendered Brown for cross-examination.

¶ 13    On cross, defense counsel asked and Brown answered as follows:

> "Q. Did you not just testify that People's Exhibit No. 4 had injuries on Mr. Inyang's outside his arm?
>
> A. Yes.
>
> Q. In a defensive—it would be consistent with a defensive wound?
>
> A. Depends on how they occurred. In my experience as a police officer it appears that someone was trying to dig their fingernails into his arms. It does not look like someone was scratching or swinging at him. If that would have been the case, there probably would have been longer scratches along his forearms."

Brown also allowed that it was still possible defendant's injuries could have come from O.A. attempting to grab onto defendant's arms if she were attacking him.

¶ 14    Defense counsel then excused Brown. The State asked no questions on redirect and rested. The defense's moved for a directed verdict, which the court denied. Following a recess, the defense recalled Brown, who testified that he did not observe any scratches or bruises on O.A., but he did notice that her hair was "messy." On cross, Brown noted that O.A. was dark-complected.

¶ 15    Sergeant Joseph Espy testified that he, too, responded to defendant's apartment that morning, but did not observe any injuries on O.A. Espy noticed a dent or hole in the drywall in defendant's apartment, which defendant had said occurred when O.A.'s cell phone struck the wall. Espy further testified that O.A. stated defendant punched her in the stomach, placed his hands around her neck, and choked to the point where she was near unconscious. On cross-examination, Espy testified that O.A. spoke in a quiet, hushed tone to him. She reported pain from her right arm and left knee. Espy also recalled that O.A.'s hair was "messed up."

¶ 16    Terrence Walker testified that he was at defendant's apartment that night and heard a commotion in defendant's room. According to Walker, he spoke to O.A. for a while outside of defendant's room as defendant listened in, and O.A. was mostly upset about her phone. Around 7 a.m., defendant told O.A. it was time for her to leave. O.A. refused and struck defendant three times. Defendant then put O.A. on his shoulder and carried her upstairs. Walker never saw defendant strike O.A. On cross-examination, Walker acknowledged that he heard O.A. yell " '[y]ou just choked me' " at defendant. Later, Walker also conceded that he heard O.A. say that defendant "assaulted her" and punched her in the stomach.

¶ 17    Defendant, age 24, testified that he and O.A. were not dating. He had never taken her out to dinner, never met her family, or given her any gifts. Defendant had been dating another young woman, and at the time of trial defendant and this other woman had been together for five years. On the morning in question, defendant picked up O.A. and drove her back to his place. After they had sex, defendant told O.A. that it was "time for her to go." The two started to argue and O.A. told him about the missed period. Defendant again asked O.A. to leave, but she started "getting violent[.]" As O.A. swung at defendant, her phone fell behind his bed. He went and retrieved the

phone, but it was broken, and O.A. began to blame him for it. Defendant denied choking or punching O.A. but said she might have been hurt when he "defend[ed] [him]self."

¶ 18    Defendant was 6'3" and around 250 pounds. He picked up O.A. and carried her outside. Then, he also called the police.

¶ 19    After the defense rested, the State recalled Officer Brown. Brown testified that he interviewed Walker at the police station, and that Walker reported O.A.'s statement that defendant punched her in the stomach and choked her.

¶ 20    The State again rested and the parties presented closing arguments. Afterwards, the trial court found O.A.'s testimony to be credible, specifically on the point of defendant having strangled her. The trial court also found that it was reasonable to infer that defendant's wounds were inflicted by O.A., "to try to get the defendant to stop strangling her." In contrast, the court did not find defendant credible and it characterized his testimony as vague and conclusory.

¶ 21    Defendant was found guilty of one count of aggravated domestic battery and one count of domestic battery. Counsel for defendant filed a post-trial motion to reconsider the finding of guilty. After reconsideration, the trial court determined that the State did not prove beyond a reasonable doubt that defendant and O.A. were in a dating relationship. Accordingly, the trial court reduced defendant's conviction to the lesser included offense of aggravated battery by strangulation (720 ILCS 5/12-3.05(a)(5) (West 2016)) and defendant was sentenced to 24 months' probation. Defendant timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant raises two contentions. The first is that the State did not prove his intent to strangle beyond a reasonable doubt. The second is that the trial court committed plain error when it considered improper lay witness testimony from Officer Brown that the marks on defendant

were "defensive wounds" without Brown having been admitted as an expert. Alternatively, defendant raised at oral argument that Brown's testimony amounted to an improper opinion, not only because of its characterization of the marks as defensive wounds, but also because Brown opined as to the ultimate cause of the wounds. Brown also testified that the wounds he observed on defendant were consistent with the account of O.A. that he had just taken. Defendant asserts that it was plain error because this improper opinion corroborated O.A.'s version of the events, and the trial court relied upon it in making its ultimate findings. After careful review, we find no merit to these contentions.

¶ 24    Turning to defendant's sufficiency-of-the-evidence argument, in a criminal trial, the State bears the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. *People v. Weinstein*, 35 Ill. 2d 467, 470 (1966). When considering the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The same standard applies whether the evidence was direct or circumstantial (*People v. Thomas*, 178 Ill. 2d 215, 232 (1997)), and whether defendant received a bench or a jury trial (*People v. Howery*, 178 Ill. 2d 1, 38 (1997)). It is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Smith*, 185 Ill. 2d 532, 542 (1999). Therefore, a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses. *People v. Cooper*, 194 Ill. 2d 419,

431 (2000).

¶ 25    Defendant notes that he did not confess to the crime of strangling O.A. and that there was "no significant physical evidence" of her strangulation. Rather, defendant asserts that the evidence in this case was circumstantial and that the O.A. gave "scanty" and inconsistent testimony regarding whether she was strangled—an event that defendant points out lasted for "not more than one to two minutes." Defendant's arguments are unpersuasive.

¶ 26    Under the Illinois Criminal Code, "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." 720 ILCS 5/4-4 (West 2016). In determining whether defendant intended to strangle O.A., we likewise look to the Criminal Code, which states, " 'Strangle' means intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual ***." *Id.* § 12-3.05(i).

¶ 27    We disagree with defendant that there were any significant inconsistencies in the victim's testimony. At trial, O.A. testified that, during her argument with defendant, he repeatedly tried to get her to leave. Then, he punched her in the stomach, "pushed [her] to the bed" and—as he was on top of her—"choked [her] with [his] two hands[.]" O.A. demonstrated for the trial court how defendant choked her. As defendant notes, O.A. testified that defendant choked her for between one to two minutes. Then, defendant offered to " 'let go' "—that is, to *stop* choking O.A.—if she would leave his house. O.A. could not speak—again, because she was being choked—but nodded to accept defendant's offer. Then, after defendant released his grip, he said, " 'You should have seen the way your eyes rolled back.' " A reasonable trier of fact could infer that defendant's statement was an acknowledgement that O.A.'s eyes rolled back in her head because her normal

breathing was impeded. Afterwards, O.A. testified that she felt pain in her neck, was unable to catch her breath, and was unable to speak correctly.

¶ 28     We note that, contrary to defendant's suggestion, there is no requirement that a victim must have been strangled for any specific length of time. The crime of aggravated battery by strangulation is complete when the defendant applies pressure on the victim's throat or neck and thereby "imped[es] the[ir] normal breathing or circulation ***." 720 ILCS 5/12-3.05(a)(5), (i).

¶ 29     Most importantly, the trial court found O.A. credible, and we do not find any aspect of her testimony "scanty," or a need for it to have been more fulsome. O.A.'s testimony of defendant's actions described a series of conscious choices that defendant made to achieve an objective—in that moment, to impede O.A.'s normal breathing—which was sufficient to prove the essential elements of intentional strangulation beyond a reasonable doubt. Again, we will not substitute our judgment for that of the trier of fact on matters of witness testimony. *Cooper*, 194 Ill. 2d at 431. Accordingly, even if we consider O.A.'s testimony in isolation, defendant's conviction for aggravated battery by strangulation must be affirmed. 720 ILCS 5/12-3.05(a)(5), (i); see *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (the testimony of a single positive, credible witness is sufficient to convict even though it is contradicted by the accused).

¶ 30     As to defendant's second contention regarding Officer Brown's testimony, we agree with defendant that it has been forfeited, therefore defendant asks that we review his claim for plain error. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Averett*, 237 Ill. 2d 1, 18 (2010); see also Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The first step of plain-error review is determining whether any error occurred at all. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Here, we find defendant is barred from raising this claim altogether.

¶ 31    While it is generally improper for police officers to rely on their specialized training and knowledge to offer testimony of events they did not observe (see, *e.g.*, *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 100 (use of narcotics cutting agent); *People v. King*, 252 Ill. App. 3d 334, 343 (1993) (gang activity)), Brown did not actually render an opinion during the State's examination of him. Rather, as defendant notes, the State "*sought* to elicit Brown's opinion" (emphasis added) as to whether defendant's wounds were defensive, but after defense counsel's objection, the prosecutor failed to return to that line of inquiry to tie up the issue before tendering Brown as a witness. Instead, on direct, Brown merely testified that defendant's wounds appeared consistent with O.A.'s statement to him on the morning of the incident. In fact, it was *defense counsel* who asked Brown on cross-examination whether defendant's injuries "would be consistent with a defensive wound[,]" to which Brown responded only that it "appear[ed] that someone was trying to dig their fingernails into his arms."

¶ 32    Thus, after carefully reviewing the record, we determine that Brown did not testify *for the State* that O.A. inflicted "defensive" wounds on defendant. While the State may have created the conditions for Brown to give that testimony, it was ultimately the defense's line of questioning that brought it out.

¶ 33    Furthermore, even if the testimony was in response to a question from the State, and did constitute error, the result would be the same. "When testimony is improperly admitted as a lay opinion, the error is harmless if the witness was, in fact, qualified as an expert, and thus would have been accepted as an expert by the trial court if so tendered." *Loggins*, 2019 IL App (1st) 160482, ¶ 110. Defendant does *not* contend that Brown could not have been admitted as an expert witness, and it is clear that the trial court would have accepted Brown as an expert based on his credentials and experience providing him with specialized knowledge of different types of wounds

and their causes under Illinois Rule of Evidence 702 (eff. Jan. 1, 2011). Moreover, Brown's testimony was collateral to the issue of whether defendant intentionally strangled O.A., which we have already determined was established by O.A.'s testimony. *Supra*, ¶ 29. Thus, any error would have been harmless at most, and "if an error was harmless, it most certainly cannot rise to the level of plain error." *People v. Leach*, 2012 IL 111534, ¶ 141.

¶ 34    Finally, we do not accept the defendant's alternative theory that Brown's testimony about the cause of the wounds on defendant's arms was essentially conjecture that the trial court then heavily relied upon in forming its own conclusion. Defendant asserts that Brown's testimony itself, and the court's reliance on it, were both improper and either constitutes plain error.  Defendant relies on *People v. King*, 2020 IL 123926, for the premise that it is improper for expert witnesses to testify to subject areas that are outside the scope of their expertise. *King* involved the State's witness, an expert in crime scene analysis, offering opinions about specifics of the case related to the scientific fields of forensic pathology and botany. *Id.* The expert's own definition of his job failed to include any relatable experience to the fields of forensic pathology or botany, and the court likewise agreed that " 'there is nothing in [his] experience, background, or training that suggests any specialized knowledge of these matters sufficient to qualify him as an expert.' " *Id.* ¶ 36. We find *King* distinguishable from the case before us involving a police officer because the officer's 15 years' experience on the force, and his specific training about identifying both offensive and defensive wounds, was an acceptable foundation for him to testify as to the nature and cause of the small wounds as observed on defendant.

¶ 35    The trial court made an independent finding based on the unchallenged testimony of the witnesses, and the extrinsic evidence of the photograph of the wounds. Brown's testimony was not the determining factor that led the trial court to find that the marks were defensive wounds caused

in the manner described by O.A. Although weight was given to Brown's testimony, the trial court clearly articulated multiple reasons for the inferences it made as to the events of the night and the cause of the wounds, as evidenced by the following:

> "THE COURT: The [c]ourt finds [O.A.'s] testimony to be credible. The court finds further that her testimony is corroborated by the exhibits admitted at trial and also most significantly by the testimony of Officer Phillip Brown.
>
> ***
>
> The Court finds [O.A.'s] testimony regarding the alleged strangulation credible.
>
> ***
>
> [O.A.'s] testimony at trial is further corroborated by the photographs of the defendant's hands and forearms. [O.A.] testified that while the defendant's hands were on her neck she was trying to get him off of her but he was much heavier and stronger than she is and so she believed and recalled that she had used her hands to scratch his hands.
>
> ***
>
> The photos admitted into evidence clearly reflect new pink and reddish wounds on both the defendant's hands and forearms.
>
> ***
>
> The court concurs [with Brown] and finds after viewing the photograph that there are wounds consistent with hard pressure being applied in a downward fashion. The wounds are small gouges in the defendant's skin. They are consistent with [O.A.'s] testimony of how she was using her hands to try to get the defendant to stop strangling her."

We reiterate that the trial court heard sufficient evidence to find defendant guilty of aggravated battery by strangulation, and defendant's assertions that the trial court would have concluded otherwise absent Officer Brown's testimony are unpersuasive.

¶ 36                                            III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the Circuit Court of DeKalb County.

¶ 38    Affirmed.