2022 IL App (1st) 201337-U

No. 1-20-1337

Order filed August 30, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| | ) | Nos.    12890135 |
| | ) | 12890136 |
| | ) | 12890137 |
| | ) | 12890138 |
| v. | ) | 12890139 |
| | ) | 12890140 |
| | ) | 12890141 |
| | ) | 12890142 |
| | ) | |
| | ) | Honorable |
| RAHI DANIEL, | ) | Diann Marsalek & |
| | ) | Lindsay Huge, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's convictions for driving a motor vehicle with a revoked license, driving too fast for conditions, improper lane usage, and leaving the scene of an accident

affirmed over his contentions the State did not prove he drove the motor vehicle and the evidence was insufficient to show improper lane usage and driving too fast for conditions.

¶ 2    Following a bench trial, the trial court found defendant Rahi Daniel guilty of driving a motor vehicle with a revoked license, driving too fast for conditions, improper lane usage, and leaving the scene of an accident. He was sentenced to the agreed term of 24 months' conditional discharge on driving a motor vehicle with a revoked license, and concurrent six-month terms of supervision on the remaining counts. On appeal, defendant challenges all his convictions, asserting the evidence was insufficient to prove that he was the driver of the abandoned vehicle at the accident scene and that he drove too fast for conditions or committed improper lane usage. We affirm.

¶ 3    Defendant was charged by complaint with driving under the influence (DUI), driving with a revoked license, operating an uninsured motor vehicle, driving too fast for conditions, improper lane usage, following a vehicle too closely, transportation or possession of open alcohol by a driver, and leaving the scene of an accident involving damage to the attended vehicle.

¶ 4    At trial, Cisroe Brown testified that on July 3, 2018, between 11:30 p.m. and midnight, he was driving northbound in the second lane, the third lane from the fast lane, on the I-94 expressway. Traffic was "light." While driving the speed limit of "55, 60" miles per hour, Brown saw a black vehicle behind him "speeding" and "weaving" between lanes. The black vehicle caught up to his car and hit it, damaging his fender and the "whole" front driver's side door. The black vehicle then hit a truck, causing the black vehicle and truck to "spin out." The black vehicle was "totalled" with airbags "deployed everywhere," and the truck was also "totalled" because it hit the wall.

¶ 5    Brown slowed down, pulled over onto the shoulder of the road, and approached the accident scene. He saw a woman and child in the truck, but no one was in the black vehicle. He then saw a man wearing blue jeans, a white shirt, and white shoes running away from the black vehicle and truck at the accident scene and jumping over a fence towards "159th northbound off 94." Brown described the clothes of the man running away from the accident to the police officers who arrived at the scene. He later saw that man handcuffed to a chair at the hospital. The man's clothes matched the description Brown gave to the police.

¶ 6    On cross-examination, Brown testified that, at the accident scene, he informed an off-duty police officer that he did not know where the driver of the abandoned vehicle was, but then stated, "he's right there jumping over the fence." He guessed that the officer "called it in." Brown was "[n]ot too sure" the man jumping over the fence exited the black vehicle that struck his vehicle; he did not see the man get out of the black vehicle. Although it was dark at the scene, artificial lights illuminated the street. The lights from the traffic stopped behind the accident also aided Brown's vision. Brown did not see the running man's face or height at the scene, but could see he was "African American" and wearing a white shirt, white shoes, and blue jeans, which was the description he gave police. He saw the man's face for the first time at the hospital.

¶ 7    On redirect examination, Brown identified defendant in court as the man he saw at the hospital, who matched the description of the individual he saw running and jumping the fence. Brown received treatment at the hospital for injuries to his head and neck.

¶ 8    Illinois State Police Trooper Manley testified that while on duty that night at about 11:45 p.m., he "assisted with the crash" and searched for the individual who had fled the scene of the

accident.[1] Over the radio, he received a description of the individual as a "male black, white shirt and jeans." Manley traveled around the area but could not find the man, so he headed back to the expressway to assist with removing the damaged vehicles from the traffic lanes. He then heard over the radio that a man was found who matched the description of the person fleeing the scene. Manley went to an exit on 159th street by a Love's truck stop, which was about 300 to 400 feet from the scene "if you hop a fence." There, he saw a South Holland police officer with defendant, whom Manley identified in court. Defendant was sweating "profusely," was "wet from something," and had a "strong odor of alcohol" coming from his mouth. He was upset, "tired," and out of breath. Manley did not recall seeing any injuries on defendant.

¶ 9    Manley placed defendant in the rear seat of his police vehicle. There, defendant hit his head against the rear window and yelled "something," but Manley could not hear what he said. Defendant was eventually transported to the hospital. Based on his experience with the Illinois State Police, Manley opined that defendant was under the influence of alcohol.

¶ 10    On cross-examination, Manley testified that he spoke with the individuals involved in the accident and learned about the man who had allegedly caused the accident and left the scene. He looked for that man in the area where he was seen hopping the fence. Manley thought he went to defendant's location at the truck stop 5 to 15 minutes after responding to the accident. He did not have a description of the man's approximate age, height, or weight but the individual was described as a "male black" wearing a white shirt and jeans. He could not recall whether he received a description of the individual's shoes. When Manley saw defendant at the truck stop, he thought

---

[1]The first name of Trooper Manley does not appear in the transcript of the trial proceedings.

defendant matched the description of the man who fled the accident scene. He did not observe where the South Holland police initially detained defendant.

¶ 11    Illinois State Police Trooper Robert Lyons testified that at about 11:45 p.m. on that night, he responded to a dispatch reporting that a "property damage crash" occurred and "someone was running away from the crash." When he arrived at the scene, he saw an abandoned vehicle and two occupied vehicles, all of which had "extensive crash damage." Inside the abandoned vehicle, he saw a box for a tequila bottle, as well as a clear plastic cup in the center console's cup holder containing a substance that smelled like alcohol.

¶ 12    Lyons relocated to the Love's truck stop and saw South Holland police officers, Manley, and defendant, whom he identified in court. Defendant was in Manley's police vehicle and had "glassy bloodshot eyes," slurred speech, and alcohol on his breath. He wore a white shirt and was "sweating profusely." Defendant screamed in an "excited delirium," banging his head "off the window," and was "just acting out of line." Defendant complained that his arm was broken, but Lyons did not see any visible injuries.

¶ 13    An ambulance transported defendant to the hospital, where he refused to take a standardized field sobriety test or submit a blood or urine sample. Lyons placed defendant under arrest at the hospital for driving under the influence of alcohol and transported him to the police station. Lyons opined from experience that defendant was under the influence of alcohol, based on his demeanor, odor of alcohol on his breath, bloodshot eyes, and slurred speech. He also opined from experience that defendant had been using "drugs" because he was sweating, banging his head on the window, and screaming in "excited delirium."

¶ 14 On cross-examination, Lyons testified that he spoke to witnesses at the accident scene and observed damage to the three vehicles involved in the accident. Lyons stated the tequila box in the abandoned vehicle did not contain a bottle, and he did not find a bottle in the vehicle. Lyons acknowledged there were other causes of sweating than drug use, and it was not unusual for people to sweat in July.

¶ 15 The State entered by stipulation a certified copy of defendant's driver's "abstract," which showed defendant's driver's license was revoked on the day of the accident. Defendant moved for a directed finding on all counts. The trial court granted the motion only as to defendant's charges of DUI and operating an uninsured motor vehicle.

¶ 16 The trial court found defendant guilty of driving with a revoked license (625 ILCS 5/6-303(a) (West 2018)), driving too fast for conditions (625 ILCS 5/11-601(a) (West 2018)), improper lane usage (625 ILCS 5/11-709(a) (West 2018)), and leaving the scene of an accident (625 ILCS 5/11-402(a) (West 2018)). Defendant was acquitted of the remaining counts of following too closely and transportation or possession of open alcohol by a driver. The court found Brown testified credibly that he saw a man drive recklessly, cause an accident, and flee the scene. It found defendant was the driver, recounting that the police found defendant in "very close proximity" to the accident scene, and he wore the same clothing as the man Brown saw fleeing.

¶ 17 Defendant filed a motion for new trial, alleging he was not proven guilty beyond a reasonable doubt and the trial court's ruling misstated trial testimony. The trial court denied the motion.

¶ 18 The court entered the agreed sentence of 24 months' conditional discharge for driving a motor vehicle with a revoked license, with concurrent six-month supervision terms on driving too

fast for conditions, improper lane usage, and leaving the scene of an accident. Defendant timely appealed.

¶ 19    On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of leaving the scene of an accident, driving with a revoked license, driving too fast for conditions, and improper lane usage. He first claims the trial evidence did not show he was the driver of the speeding vehicle that caused the accident.[2] He then argues that, aside from the insufficient evidence that he was the driver, the evidence was insufficient to show he drove too fast for conditions or committed improper lane usage.[3]

¶ 20    When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. Rather, it is the role of the trier of fact "to determine the credibility of witnesses, to weigh their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence." *People v. Williams*, 193 Ill. 2d 306, 338 (2000). The trier of fact need not "disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent with innocence, and raise

---

[2] Defendant also argues the trial evidence was insufficient to establish his guilt of following too closely. However, the trial court acquitted him of that count and we need not review this contention.

[3] Defendant claims at one point that " the trial court's rulings misstate key trial testimony and the trial court's findings are based on facts not in evidence." However, it is clear defendant is merely challenging the sufficiency of the evidence.

those explanations to a level of reasonable doubt." *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 21　Defendant first argues his convictions should be reversed as the evidence was insufficient to show he was the driver of the black motor vehicle who allegedly caused the accident and who abandoned the vehicle at the accident scene. Evidence that defendant drove the vehicle underlies all four of his convictions.

¶ 22　To prove defendant guilty of leaving the scene of an accident, the State must prove defendant failed to comply with section 11-402(a) of the Illinois Vehicle Code (Code), which requires a driver of a vehicle involved in a motor vehicle accident resulting in damage to a vehicle driven by any person to "immediately stop such vehicle at the scene of such motor vehicle accident or as close thereto as possible," but shall return to "and in every event shall remain at the scene" of the accident until having shared the driver's information required by section 11-403 of the Code. 625 ILCS 5/11-402(a) (West 2018); see 625 ILCS 5/11-403 (West 2018).

¶ 23　To prove defendant guilty of driving on a revoked license, the State was required to show defendant drove a motor vehicle on an Illinois highway at a time that his driver's license was revoked. 625 ILCS 5/6-303(a) (West 2018). Defendant does not challenge the evidence that his license was revoked at the time of the accident, only that he was the driver of the black vehicle.

¶ 24　To prove defendant guilty of driving too fast for conditions, the State was to show defendant drove a vehicle on an Illinois highway "at a speed which is greater than is reasonable

and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. *** Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." 625 ILCS 5/11-601(a) (West 2018).

¶ 25    To prove defendant guilty of improper lane usage, the State had to show defendant failed to drive a vehicle "as nearly as practicable entirely within a single lane," and did not move from such lane until "first ascertain[ing] that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2018).

¶ 26    In this case, the State presented sufficient evidence to prove defendant drove the black speeding vehicle that caused the accident and abandoned the vehicle at the accident scene. The evidence included the firsthand account of Brown, whom the trial court found credible. See *Williams*, 193 Ill. 2d at 338 (this court will not overturn the trial court's findings of credibility). Specifically, Brown testified that at around midnight while driving on I-94, he was driving the speed limit when he observed a black vehicle speeding and weaving through traffic behind him. The black vehicle caught up to him, hit his vehicle and then a truck, causing damage to all three vehicles. After he pulled over and approached the other vehicles involved in the accident, Brown observed that the black vehicle was unoccupied. He then saw an "African American" man wearing a white shirt, blue jeans, and white shoes run away from the accident scene and jump over a fence, north towards 159th Street. It is a reasonable inference from this evidence that the runner was the driver of the black vehicle.

¶ 27    The evidence also showed that, shortly after the accident, the two troopers observed defendant held by South Holland police at a truck stop located about 300 to 400 feet north of the

accident scene near 159th Street. The troopers observed defendant was an African American man wearing a white shirt and blue jeans, and matched the description of the man fleeing the scene of the accident. Defendant was yelling, sweating profusely, and complaining of a broken arm to State Trooper Lyons. His breath smelled like alcohol, and an officer had noted a cup smelling of alcohol in the black vehicle.

¶ 28    It is reasonable to infer that defendant was the man whom Brown saw running from the accident, *i.e.*, the driver of the black vehicle, where defendant matched the description of the runner, was found a few hundred feet from the crash site in the area of 159th Street toward which the man ran, and was drenched in sweat, a common sign of physical exertion. Moreover, defendant was yelling in pain due to an injury, which a rational trier of fact could reasonably infer defendant sustained during the collision that "totalled" his vehicle and deployed his vehicle's airbags. In fact, defendant complained of a broken arm, and he was transported to the hospital, where Brown noted he matched the description of the man he saw running from the scene of the accident. Viewing the totality of this evidence and drawing all reasonable inferences in the light most favorable to the State, a rational trier of fact could have concluded defendant drove the speeding vehicle that caused the accident and fled the scene in violation of section 11-402(a) of the Code and drove a motor vehicle while his license was revoked in violation of section 6-303(a).

¶ 29    In proving defendant guilty of any of the offenses, the State was not required, as defendant suggests, to present eyewitness testimony observing defendant actually exit the black vehicle, or evidence establishing he had keys to the vehicle or was the vehicle's registered owner. These are not elements of the offenses, and a defendant's identity as the offender may be established through circumstantial evidence. *People v. Digirolamo*, 179 Ill. 2d 24, 43-44 (1997) (circumstantial

evidence alone was sufficient to show the defendant drove the vehicle that struck and killed a pedestrian). Therefore, the trial court's finding that defendant drove the black vehicle and abandoned the scene of a motor vehicle accident was not "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12.

¶ 30 Defendant also asserts that, aside from the insufficient evidence proving he was the driver, the State failed to prove him guilty of the other elements of improper lane usage and driving too fast for conditions. However, defendant has failed to develop any argument and cite to relevant case law supporting his claim that the evidence was insufficient to convict him of improper lane usage. We will not consider this forfeited argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [in the opening brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 31 Turning to defendant's argument that the evidence was insufficient to prove he drove too fast for the conditions at the time of the accident, he points out Brown testified traffic was light at the time, and no proof was offered regarding the weather conditions.

¶ 32 Section 11-601(a) of the Code, on which his conviction was based, states:

"No vehicle may be driven upon any highway of this State at a speed which is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property. *** Speed must be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." 625 ILCS 5/11-601(a) (West 2018).

¶ 33 Here, not only is the evidence sufficient to support a finding that defendant was the driver of the black vehicle, it is also sufficient to prove beyond a reasonable doubt he drove the vehicle too fast for conditions. The evidence shows that, while it was dark outside, defendant's black vehicle was speeding and weaving in and out of traffic lanes behind Brown's vehicle, which traveled at the speed limit. Defendant caught up to Brown and hit Brown's vehicle with enough force to cause damage to Brown's fender and "whole" driver's side door. Defendant then hit a truck with enough force to spin the truck and cause it to hit a wall, "total[ing]" both the truck and defendant's vehicle.

¶ 34 Even though it was apparently a clear night and traffic was light, the evidence that defendant sped his car around other vehicles at night, at such speed that he hit two vehicles with enough force to damage one and total the other as well as his own, was sufficient to show defendant drove too fast for the conditions existing at the time and did not decrease his speed to avoid a collision as required by law. Construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, the trial court's finding that defendant drove too fast for the conditions on the road was not "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12; *Cooper*, 194 Ill. 2d at 430-31; see *People v. Swenson*, 2020 IL 124688, ¶ 35 (we draw all reasonable inferences "in favor of a finding of guilt").

¶ 35 To the extent defendant appears to argue that the officers lacked probable cause to arrest him, he has failed to preserve any such issue for appeal, as lack of probable cause was never raised before the trial court. See *People v. Harvey*, 211 Ill. 2d 368, 388-89 (2004) (issue raised for the

first time on appeal is forfeited). As such, any issue defendant attempts to raise challenging his arrest is forfeited.

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.