2026 IL App (1st) 231948-U

No. 1-23-1948

Order filed February 5, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 MC1 198194 |
| | ) | |
| KEITH BAQUET, | ) | Honorable |
| | ) | Daniel J. Gallagher, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for battery over his contention that the State failed to disprove that he acted in self-defense.

¶ 2    Following a bench trial, defendant-appellant, Keith Baquet, was found guilty of the battery of Agustin Medina (720 ILCS 5/12-3(a)(1) (West 2022)) and sentenced to 1 year of probation, 10 days of Sheriff's Work Alternative Program (SWAP), and 8 hours of an anger management

program, and ordered to avoid contact with Medina.[1] On appeal, Mr. Baquet contends that the State failed to disprove that he struck Medina in self-defense. We affirm.

¶ 3      Mr. Baquet was charged by complaint with one count of battery arising from an incident where he allegedly struck Medina's head with a pipe.

¶ 4      At trial, Medina testified through a Spanish interpreter that on September 19, 2022, he drove a food truck to the 2000 block of North Mendell Street in Chicago. A man, whom Medina identified in court as Mr. Baquet, approached the food truck and "served himself." Medina asked Mr. Baquet to pay and after he refused, told him to leave the food. Mr. Baquet left the food and "cuss[ed]" at Medina in English, and Medina "cuss[ed]" back. Medina then turned to other customers and heard them say, "watch out." Medina was then struck from behind on the right side of his head and left shoulder with an "old and rusted" pipe one to two inches in diameter. Medina then fled under the truck. The injury bled "a lot," and he was treated at the hospital.

¶ 5      On cross-examination, Medina stated that he recognized Mr. Baquet and had previously argued with him because Mr. Baquet "doesn't like to pay." When Medina told Mr. Baquet to pay for the food, they were "face to face." Medina did not recall whether he was holding a metal spoon.

¶ 6      On redirect examination, Medina testified that he never threatened Mr. Baquet but told him that he "didn't want to have any more dealings with him."

¶ 7      Jesus Flores testified through a Spanish interpreter that on September 19, 2022, he worked at the same business as Mr. Baquet, near where the food truck was parked. On that day, he saw the food truck vendor bleeding from his head and Mr. Baquet walking away from the truck holding a

---

[1] Medina's first name appears as "Agustin," "Augustin," and "Augustine" in the record on appeal. We adopt the spelling from the complaint.

stainless-steel pipe, which was approximately 3 feet long and 1½ inches in diameter. Mr. Baquet chased the vendor, who fled under the truck.

¶ 8     Mr. Baquet testified that he and Medina had argued on two occasions before the incident on September 19, 2022. That day, he approached the food truck, and Medina got "in [his] face," approximately six inches from him. Medina was holding a 12-inch stainless steel spoon, and Mr. Baquet did not understand what Medina was saying, so he believed that Medina would hit him. Mr. Baquet then looked for something to defend himself and found an object within "[a]rm's-length." Mr. Baquet did not "touch*** anything on [the] truck."

¶ 9     On cross-examination, Mr. Baquet stated that he felt threatened by Medina holding a stainless-steel spoon because Medina was "face to face" with him and did not move. Medina never hit him, and Mr. Baquet could not understand what Medina said, but believed that Medina was threatening him with the spoon. He did not recall if Medina raised the spoon against him. Mr. Baquet struck Medina "across the head" rather than "over the head."

¶ 10     On redirect examination, Mr. Baquet testified that Medina was yelling and "his voice sound[ed] threatening."

¶ 11     The court found defendant guilty of battery. In its ruling, the court noted that no testimony established the layout of the food truck but, regardless, it was not "surprising" that a 12-inch serving spoon was around the truck. The court noted that even if it believed Mr. Baquet's version of events, which it did not, Mr. Baquet did not testify that Medina raised the spoon or attempted to hit him with it, and they had no history of physical altercations. The court stated it did not find Mr. Baquet "very credible" and his story "doesn't make sense," so it had "zero question" about his guilt.

¶ 12    Mr. Baquet filed two motions for a new trial arguing, *inter alia*, that the defense provided a valid claim of self-defense, and the State did not prove him guilty of battery. During the pendency of the first motion, the court sentenced Mr. Baquet to 1 year probation, 10 days of SWAP, and 8 hours of an anger management program, and ordered him to avoid contact with Medina.

¶ 13    At a later court date, the court denied Mr. Baquet's motions, finding that self-defense using a metal pipe would not have been proportional to defendant being "threatened by a man" wielding a "12-inch metal spoon." The court noted that it "believed" Medina and Flores and "utterly did not believe" Mr. Baquet. The court also denied Mr. Baquet's motion to reconsider sentence.

¶ 14    On appeal, Mr. Baquet argues that the State did not disprove that he acted in self-defense by striking Medina with a pipe. He contends that Medina was the initial aggressor, and Medina's conduct would have made a reasonable person fear an imminent unlawful battery and justified his use of the pipe as "a reasonable, direct, and proportionate response."

¶ 15    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). The reviewing court will not reverse a conviction unless the evidence is

"unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).

¶ 16     To sustain a conviction for battery as charged here, the State needed to prove that Mr. Baquet knowingly, without legal justification, caused bodily harm to Medina. 720 ILCS 5/12-3(a)(1) (West 2022)). Mr. Baquet does not dispute that he knowingly caused bodily harm to Medina but contends that he was justified in striking Medina with the pipe in self-defense.

¶ 17     "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force." 720 ILCS 5/7-1(a) (West 2022). Self-defense requires that (1) unlawful force was threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of force applied, and (6) the beliefs of the person were objectively reasonable. *People v. Gray*, 2017 IL 120958, ¶ 50. If the State negates any one of these elements, the self-defense claim fails. *Id.*

¶ 18     The evidence in this case, viewed in the light most favorable to the State, was sufficient to prove beyond a reasonable doubt that Mr. Baquet did not act in self-defense when he struck Medina's head with a pipe.

¶ 19     Mr. Baquet argues that Medina wielded a 12-inch stainless steel spoon and shouted at him in Spanish, a language he did not understand, and so he believed that Medina would hit him with the spoon. He contends that his perception of the danger is dispositive, and his judgment was imperfect but reasonable under the circumstances. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 55 ("A defendant need not exercise infallible judgment, only reasonable judgment under

the existing circumstances." (internal quotation marks omitted)). Mr. Baquet maintains that he was justified in striking Medina with the pipe to protect himself from "imminent" attack where Medina approached him and threatened him with a spoon, making Medina the initial aggressor.

¶ 20    Mr. Baquet's contentions do not provide a basis to reverse the trial court's judgment. First, Mr. Baquet's testimony varied significantly from Medina's and Flores' testimonies. The trial court was responsible for assessing the credibility of the witnesses and drawing reasonable inferences from the evidence. See *Brown*, 2013 IL 114196, ¶ 48 (finding the trier of fact has the responsibility to resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from the facts). The court was under no obligation to accept Mr. Baquet's version of events and claim of self-defense (*People v. Young*, 347 Ill. App. 3d 909, 920 (2004)), and found his testimony that Medina was the initial aggressor and wielded a serving spoon during the confrontation "utterly" unbelievable. We defer to that credibility determination. See *Brown*, 2013 IL 114196, ¶ 48 ("a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses.").

¶ 21    Even taking Mr. Baquet's interpretation of events as true, the evidence showed Medina only held a 12-inch serving spoon and had already turned away when Mr. Baquet hit him from the back with the pipe. Given this evidence, a rational trier of fact could reasonably find that Mr. Baquet's belief that he needed to defend himself by hitting Medina in the head from behind with a three-foot long metal pipe was objectively unreasonable. See *Gray*, 2017 IL 120958, ¶ 50 (listing the elements of self-defense including that "the beliefs of the person threatened were objectively reasonable); see also *People v. Guja*, 2016 IL App (1st) 140046, ¶ 52 ("[I]f the defendant responds to a confrontation with such excessive force that he is no longer acting in self-defense but in

retaliation, the excessive use of force renders the defendant the aggressor, even if the other person involved actually commenced the confrontation.").

¶ 22    Taking all the evidence in the light most favorable to the State, a trier of fact could reasonably conclude that Mr. Baquet did not act in self-defense against Medina. As the evidence is not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt," we affirm his conviction. See *Jackson*, 232 Ill. 2d at 284 (finding that there was not overwhelming evidence of guilt presented but could not say, "viewing the evidence in the light most favorable to the State, a rational trier of fact could not have found defendant guilty").

¶ 23    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 24    Affirmed.